# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROBERT D. ELLINGSON,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Commissioner, Social Security Administration,<br><br>        Defendant. | Case No. 6:16-cv-01358-JR<br><br>**OPINION AND ORDER** |

**RUSSO, Magistrate Judge.**

Plaintiff, Robert D. Ellingson, brings this proceeding to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB"). For the following reasons, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on March 7, 2011, alleging disability beginning October 16, 2010. Tr. 113. After a hearing before an Administrative Law Judge ("ALJ") in November 2012, plaintiff's claim was denied. Tr. 11-19. On appeal, the U.S. District Court of

Oklahoma remanded the case to the Commissioner for further proceedings. Tr. 384-93. Specifically, the Court instructed the ALJ to consider evidence provided by plaintiff's mental health counselor, Linda Estes, LPC, and plaintiff's sister, June Loveland. Tr. 393.

During the pendency of this claim, plaintiff moved to Oregon and filed a second application for benefits based on new medical evidence relating to his heart condition and an exercise stress test. Tr. 396. The Commissioner found plaintiff disabled as of February 28, 2014 under the Medical-Vocational Guidelines. Id. Accordingly, the Appeals Council directed the ALJ to convene a new disability hearing for the limited period from October 16, 2010, to February 28, 2014. Id. After the second hearing in February 2016, the ALJ issued a decision finding plaintiff not disabled during the relevant time period. Tr. 320-32. The ALJ's determination represented the final decision of the Commissioner. Plaintiff now seeks review of that decision.

## STATEMENT OF FACTS

Born on October 26, 1958, plaintiff was 51 years old on the alleged onset date of disability and 57 years old at the time of the second hearing. Tr. 330. Plaintiff completed the ninth grade and attended vocational truck driving training. Tr. 29. He worked previously as a tractor-trailer truck driver. Tr. 43. Plaintiff alleges disability based on depression and post-traumatic stress disorder ("PTSD") stemming from allegedly waking up during a surgical procedure he underwent in 1997 to remove prostate cancer. Tr. 136, 326.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations

omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she

cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis, as detailed above. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity during the relevant time period. Tr. 323. At step two, the ALJ found plaintiff had the following severe impairments: "residuals from bladder cancer treatment, including major depression, post-traumatic stress disorder (PTSD), and urostomy." Id. At step three, the ALJ determined plaintiff's impairments, considered individually or in combination, did not meet or equal the requirements of a listed impairment. Tr. 323-25.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ determined that plaintiff had the residual functional capacity ("RFC') to perform medium work with the following additional limitations:

> He could never crawl, and he could never climb ladders, ropes, or scaffolds. He could not work in extreme temperatures. He was limited to no more than occasional interaction with the public, coworkers, and supervisors. Time off task would be accommodated by normal breaks. He could not perform work at an assembly line pace, but he could perform goal-oriented work.

Tr. 325.

At step four, the ALJ determined plaintiff was unable to perform past relevant work. Finally, at step five, the ALJ determined, with the assistance of a Vocational Expert ("VE"),

there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Tr. 330-31.[1]

## DISCUSSION

Plaintiff argues the ALJ erred in: (1) finding plaintiff's symptom testimony not credible; (2) giving no weight to the "other source" testimony of plaintiff's mental health counselor, Linda Estes, and giving little weight to lay witness testimony offered by plaintiff's sister, June Loveland; and (3) failing to incorporate all of plaintiff's limitations in the RFC, resulting in an inadequate hypothetical at step five.

### A. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to give clear and convincing reasons for rejecting his symptom testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not

---

[1] The VE testified plaintiff retains the functional capacity to perform the following occupations: cleaner (DOT# 381.687-018); laundry worker (DOT# 361.685-018); and linen room attendant (DOT# 222.387-030). Tr. 331.

engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).[2]

Plaintiff argues the ALJ erred in finding his allegation of auditory hallucinations inconsistent with prior testimony and the treatment record. Pl.'s Opening Br. 8 (doc. 17). In support, plaintiff points to a single comment in the medical record that states "[A]bilify is working well . . . no voices or paranoia," as evidence that he informed his medical providers of hallucinations. Tr. 283. Plaintiff's argument lacks merit for two reasons. First, when read in the context of the medication review form it is found in, the comment most likely documents plaintiff's lack of adverse side-effects from his antipsychotic medication. Second, and more importantly, plaintiff specifically denied experiencing auditory hallucinations in a mental health assessment form he completed in October 2011. Tr. 252. Thus, the ALJ provided a clear and convincing reason, supported by substantial evidence, for finding plaintiff's allegations of hallucinations less than fully credible.

Plaintiff also contends the ALJ erroneously found his claims regarding the severity of his symptoms were undermined by his hearing testimony and evidence showing the efficacy of his medications. Pl.'s Opening Br. 9 (doc. 17). Although plaintiff concedes his medications were

---

[2] The Court notes that effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. See SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. The ALJ's March 2, 2016 decision was issued two weeks before SSR 16-3p became effective and there is no binding precedent interpreting this new ruling or whether it applies retroactively. Compare Ashlock v. Colvin, 2016 WL 3438490, *5 n.1 (W.D. Wash. June 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, 2016 WL 2622325, *3 n.1 (N.D. Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision). Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve the issue.

effective in treating his anger, he argues they failed to relieve his symptoms of depression. Id. Nevertheless, plaintiff's argument is belied by the record and his own testimony. For example, in both of his hearings, plaintiff stated that his anti-depressants alleviated his depression and mood swings. Tr. 33, 309. Furthermore, plaintiff reported positive results from his medications at four separate mental health appointments in the spring of 2012. Tr. 286, 283, 277-78, 290. In fact, the record reflects plaintiff reported only positive results after he began taking his anti-depressants and attending counseling regularly, aside from a single report of nightmares. Id. Accordingly, the ALJ's determination that the effectiveness of plaintiff's medication was inconsistent with the alleged severity of his impairments is supported by substantial evidence. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008).

Plaintiff next asserts the ALJ erroneously found inconsistencies in his testimony regarding the circumstances of his exit from the workforce. Pl.'s Opening Br. 9 (doc. 17). In making her finding, the ALJ determined plaintiff stopped working due to a "business-related layoff," not because of his mental health conditions. Tr. 327. The record reflects plaintiff has offered several explanations as to why he stopped working. In March 2011, plaintiff completed a Disability Report in which he check-marked a box indicating he left work "because of other reasons," and wrote that he was "laid off of employment," rather than check-marking the box indicating he left work "because of [his] condition(s)." Tr. 136. Later, during the 2012 hearing, plaintiff stated he stopped working because he could not "concentrate long enough" to do his job, and was unable to make his deliveries on time. Tr. 343-44. Subsequently, during the 2016 hearing, plaintiff stated that he could not remember whether he was fired or quit his job, and that "[I] figured I couldn't do it no more." Tr. 301.

Given the inconsistencies, the ALJ stated, "the fact the claimant provided inaccurate information on matters so integral to determining disability suggest that much of what he alleged may be similarly unreliable." Tr. 327. The ALJ adequately identified clear and convincing reasons, supported by substantial evidence, for impugning plaintiff's testimony regarding his reasons for leaving the workforce.

Plaintiff also disputes the propriety of the ALJ' finding that his ability to work for 13 years despite his impairments "strongly suggest [his impairments] would not have prevented work during the period at issue." Tr. 327. Plaintiff offers no legal basis for why the ALJ's finding was improper. Instead, plaintiff asserts the PTSD and depression arising from his traumatic experience in the operating room gradually worsened over time, "to the point that he had not been able to do his job right." Pl.'s Opening Br. 10 (doc. 17).

The Court will not disturb the ALJ's finding for two reasons. First, a demonstrated ability to work for a number of years despite a serious medical condition is a clear and convincing reason to give less weight to plaintiff's testimony. Gregory v. Bowen, 844 F.2d 664, 666-67 (9th Cir. 1988). Second, plaintiff's assertion is unsupported; he offers nothing more than his own interpretation of the evidence. As such, the argument is unavailing, because where "evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The ALJ's interpretation was rational and supported by specific evidence; indeed, the record reflects no evidence of exacerbation of his impairments, and plaintiff did not seek medical treatment for over a year after the alleged onset of his PTSD and depression. Tr. 327. "The ALJ is permitted to consider lack of treatment in [her] credibility determination." Burch, 400 F.3d at

681. Accordingly, the ALJ properly took plaintiff's work history into account in finding his testimony less than credible.

Plaintiff next argues the ALJ erred by finding his receipt of unemployment benefits in 2010 and 2011 demonstrated he was willing and able to work during the relevant period. Pl.'s Opening Br. 10 (doc. 17). Plaintiff argues the record is equivocal as to whether he held himself out as available to work full or part-time, and that only the former is inconsistent with disability. Pl.'s Reply Br. 5 (doc. 19), see also Carmickle v. Commr., Soc. Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008). Specifically, plaintiff explains that Oregon law allows a claimant to receive unemployment benefits even if he cannot work full-time. Pl.'s Opening Br. 10 (doc. 17), see also OR. ADMIN. R. 471-030-0036(3)(e) ("[a]n individual with a . . . physical or mental impairment . . . which prevents the individual from working full time . . . shall not be deemed unavailable for work solely on that basis so long as the individual remains available for some work.) Accordingly, plaintiff asserts the ALJ's finding is not supported by substantial evidence.

The Commissioner responds that plaintiff was living in either Oklahoma or California when he received unemployment benefits, and both states require claimants to endorse they are willing to work full-time. Def.'s Br. 7-8 (doc. 18). The Court finds resolving the issues of what state plaintiff received unemployment compensation from and what amount of work plaintiff certified he was willing to undertake is unnecessary. Even assuming plaintiff is correct and the ALJ's finding on this point was not based on substantial evidence, the ALJ provided numerous other clear and convincing reasons, supported by substantial evidence, for discrediting plaintiff's symptom testimony. Accordingly, the Court finds any error was harmless. See Batson, 359 F.3d at 1197 (applying the harmless error standard).

The Commissioner also asserts the ALJ properly discounted plaintiff's credibility to the extent his subjective complaints were inconsistent with his reported activities, especially noting plaintiff's ability to socialize with others. Def.'s Br. 9-10 (doc. 18). In evaluating testimony, an ALJ may properly look to "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (citation omitted). Here, the ALJ noted that plaintiff's assertion he was unable to get along with others and had no friends was inconsistent with his earlier reports. Tr. 326. For example, plaintiff reported he regularly spent time with others, talking and telling jokes. Tr. 157. He had no difficulties getting along with family, friends, and neighbors. Tr. 158.

Plaintiff has not raised persuasive arguments illustrating the ALJ committed reversible error in her discussion of plaintiff's credibility. Accordingly, the Court upholds the ALJ's findings.

**B. Lay Witness Testimony**

**1. Plaintiff's Treating Counselor**

Plaintiff disputes the ALJ's reasons for giving no weight to the opinion of plaintiff's treating mental health counselor, Linda Estes, LPC. Social Security Rule ("SSR") 06-03p defines "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p. Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). Because Ms. Estes is a licensed professional counselor, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." Molina, 674 F.3d at 1111 (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." Molina, 674 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." Id. at 1118-19. Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056.

Plaintiff first argues the ALJ improperly discounted Ms. Estes's opinion by stating she "merely recites the claimant's subjective reports, which are less than credible." Tr. 328. Plaintiff asserts that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaint where the doctor

does not discredit those complaints and supports his ultimate opinion with his own observations." Pl.'s Opening Br. 12 (doc. 17) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). Plaintiff notes there is nothing in the record to suggest Ms. Estes did not believe plaintiff, or that Ms. Estes relied on plaintiff's subjective complaints more than her own clinical observations. Pl.'s Opening Br. 12 (doc. 17).

Plaintiff's reliance on Ryan is misplaced. Ryan examined whether an ALJ provided sufficiently clear and convincing reasons for discounting the opinion of an examining physician. Here, the ALJ needed only provide germane reasons for discounting Ms. Estes's opinion—which the ALJ did. Molina, 674 F.3d at 1111. Furthermore, the Commissioner notes that shortly after Ryan was decided, a unanimous Ninth Circuit panel held, "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041 (citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999)). Indeed, the facts of Tommasetti are analogous to the case at bar. Review of the record reflects that Ms. Estes's opinion relied almost exclusively on plaintiff's subjective complaints, is devoid of objective testing, and contains few independent observations. Tr. 252, 260, 264, 268, 272-75, 277-79, 283, 286, 290, 294-95. Therefore, the ALJ discounted Ms. Estes's opinion because it was overly reliant on plaintiff's non-credible subjective complaints. This was a legally-sufficient reason for giving Ms. Estes's opinion no weight.

Plaintiff next takes issue with the ALJ's finding that Ms. Estes's letter, wrote on plaintiff's behalf, was inconsistent with the medical record and plaintiff's testimony. Pl.'s Opening Br. 12-13 (doc. 17); see also Tr. 328-29, 294-95. An inconsistency between a medical provider's opinion and treatment notes is a clear and convincing reason for an ALJ to discount

that opinion. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ accurately noted that Ms. Estes's opinions were inconsistent with her own treatment notes, which indicated plaintiff's conditions were generally controlled with medication and counseling. Compare Tr. 294-95, with Tr. 280, 283, 286, 290. Also, Ms. Estes's opinion was inconsistent with plaintiff's own testimony that his symptoms were generally managed when he was taking medication. Tr. 33, 309.

Ms. Estes's opinion was further contradicted by other medical evidence. An ALJ may discredit opinions unsupported by the record as a whole. Batson, 359 F.3d at 1195. In May 2011, plaintiff underwent a psychiatric examination conducted by Dr. Michael Maguire, Psy.D. Tr. 215-218. Dr. Maguire found plaintiff's concentration, persistence, and pace within normal limits. Tr. 216. Moreover, despite plaintiff's self-reported difficulties with concentration, Dr. Maguire noted, "this was not apparent during the mental status exam."[3] Id. Therefore, the ALJ did not err in finding the objective testing conducted by Dr. Maguire more reliable than Ms. Estes's unsupported opinion.

Finally, plaintiff argues the ALJ incorrectly asserted Ms. Estes opined on an issue reserved to the Commissioner—namely, the issue of disability. Pl.'s Opening Br. 13 (doc. 17). Plaintiff correctly notes Ms. Estes did not state plaintiff was "disabled," nor did she provide an opinion on the ultimate issue of disability. Id.; see also Tr. 294-95. Thus, while the ALJ made an accurate statement of law about the ultimate issue of disability being within her purview; that statement was not applicable to Ms. Estes's opinion and was not a germane reason for discounting it. See SSR 96-5p. However, the error is harmless; and as discussed above, the ALJ

---

[3] Notably, Dr. Maguire's examination was administered five months before plaintiff began taking medication and started mental health treatment with Ms. Estes. Tr. 215, 252.

provided adequate justifications for giving no weight to Ms. Estes's opinion. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

### 2. Plaintiff's Sister

Next, plaintiff charges the ALJ with error for giving little weight to the third-party function report completed by plaintiff's sister, June Loveland. Pl.'s Opening Br. 13-15 (doc. 17); see also Tr. 141-50. Lay testimony concerning a claimant's symptoms, or how an impairment affects the ability to work is competent evidence that an ALJ must consider. Molina, 674 F.3d at 1114 (citations omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

Plaintiff argues the ALJ erred in finding Ms. Loveland's report that plaintiff cannot lift more than 10 pounds was "not consistent with the limited medical evidence of record." Tr. 326. Plaintiff notes that, "[t]he rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." Pl.'s Opening Br. 14 (doc. 17) (citing Smolen, 80 F.3d at 1289) (alteration and emphasis in original). Plaintiff's argument is unpersuasive. Ms. Loveland's assertion of a 10-pound lifting limitation is not unsupported by the medical records; rather, it is contradicted by examining physician, Dr. Shahid Ali's finding that plaintiff can lift 50 pounds occasionally and 25 pounds frequently. Tr. 212. Furthermore, inconsistency with the medical evidence is a germane reason to reject lay witness statements. Bayliss, 427 F.3d at 1218.

Plaintiff further argues the ALJ improperly inferred that Ms. Loveland was biased when the ALJ stated, "[d]ue to Ms. Loveland's relationship with and affection for the claimant, she is understandably sympathetic to him and has a natural tendency to agree with his reported

PAGE 14 – OPINION AND ORDER

limitations." Tr. 326. Plaintiff notes an ALJ may not reject the testimony of a relative solely because the lay witness has a close relationship with plaintiff. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693-94 (9th Cir. 2009). In affording little weight to Ms. Loveland's statement, the ALJ did not rely solely on her relationship with plaintiff. As discussed, the ALJ found her statement was contradicted by the medical evidence.

Moreover, the ALJ also noted that "Ms. Loveland's statements generally mirrored the claimant's reports of pain, limitations, and activities of daily living." Tr. 326. In fact, the statements completed by plaintiff and Ms. Loveland are nearly identical in terms of wording and contentions. Compare Tr. 141-50, with Tr. 151-61. Due to the handwriting similarity in both statements, the Commissioner asserts that plaintiff likely wrote both statements. The Court, however, need not reach this far in upholding the ALJ's reasoning. When an ALJ provides germane reasons for rejecting the claimant's testimony, those reasons are equally germane to similar testimony by a lay witness. Molina, 674 F.3d at 1114. As discussed, the ALJ gave sufficiently clear and convincing reasons for rejecting plaintiff's symptom testimony; thus, those reasons apply with equal force to Ms. Loveland's statements. Accordingly, the ALJ did not commit legal error and the Court finds no reason for reversal on these grounds.

## C.  RFC and Step Five Finding

Plaintiff argues the ALJ's RFC determination was contrary to the evidence. Specifically, plaintiff asserts the ALJ's failure to account for his concentration, persistence, and pace limitations in the RFC is reversible error. Plaintiff also argues the hypothetical presented to the VE was inadequate.

### 1.  The RFC

The RFC is the "most [a claimant] can still do despite [the claimant's] limitations," and is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). The ALJ has

PAGE 15 – OPINION AND ORDER

the responsibility of determining plaintiff's RFC. § 404.1546(c). The RFC is used at step four of the sequential analysis to determine if the claimant is able to perform past relevant work, and at step five to determine if the plaintiff can adjust to other work that exists in significant numbers in the national economy. § 416.920(a). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The Court must uphold the RFC determination "if the ALJ applied the proper legal standard and h[er] decision is supported by substantial evidence." Bayliss, 427 F.3d at 1217.

Plaintiff's first argument against the ALJ's RFC determination is essentially a second challenge of the ALJ's treatment of the evidence presented by plaintiff and Ms. Loveland. Plaintiff argues that had the 10-pound lifting limitation been included in the RFC, the ALJ's finding that plaintiff can perform "medium work"[4] would constitute reversible error. Pl.'s Opening Br. 15-16 (doc. 17). As discussed, the ALJ properly discredited plaintiff's alleged lifting limitation, and gave controlling weight to Dr. Ali's opinion on the issue. Therefore, the RFC's limitation to "medium work" was supported by substantial evidence.

Plaintiff also contests the ALJ's findings regarding his limitations in concentration, persistence, and pace. Pl.'s Opening Br. 16 (doc. 17); see also Tr. 324. Plaintiff argues the ALJ committed reversible error by failing to account for those limitations in the RFC. Pl.'s Opening Br. 16 (doc. 17) (citing Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211 (9th Cir. 2009) (unpublished) (finding the ALJ erred by failing to account for the claimant's difficulties with concentration, persistence, and pace after accepting medical evidence that the claimant had

---

[4] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

moderate difficulties in those areas); Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709 (9th Cir. 2013) (unpublished) (same)).

Although plaintiff correctly observes the ALJ's step three finding was not ultimately incorporated into the RFC, limitations identified during steps two and three of the sequential analysis are not equivalent to limitations employed in the RFC at steps four and five. SSR 96-8p ("The [ALJ] must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); see also Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) ("The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."). Consequently, the ALJ was not required to automatically incorporate her step three observations into the RFC.

"[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, the relevant medical evidence established that plaintiff had no difficulties with concentration, persistence, or pace, and he was able to perform complex and simple tasks. Tr. 216-17. The ALJ, however, found the hearing testimony showed plaintiff had some non-exertional limitations due to PTSD and depression. Tr. 330. The ALJ adequately accounted for these limitations in the RFC by limiting plaintiff's social contact, prohibiting assembly-line paced work, and noting time off task would be accommodated by regular breaks. Id. The ALJ was not required to include all possible limitations in her assessment, only "limitations that the

ALJ found credible and supported by substantial evidence in the record." Bayliss, 427 F.3d at 1217. The Court finds the ALJ satisfied this requirement.

Furthermore, Brink and Lubin are not applicable. Those cases held that an ALJ's RFC limitation to "simple, repetitive work" did not adequately account for a claimant's moderate difficulties with concentration, persistence, and pace when those limitations were supported by medical evidence accepted by the ALJ. Brink, 343 F. App'x at 212; accord Lubin, 507 F. App'x at 712.[5] As mentioned, there was no medical evidence supporting plaintiff's difficulty with concentration, persistence, or pace; instead, the ALJ noted that plaintiff's testimony—to the extent the ALJ found it credible—presented both exertional and non-exertional limitations that needed to be accounted for in the RFC. The ALJ did just that. Tr. 325.

### 2. Step Five Finding

Plaintiff argues the step five finding was flawed because the hypothetical presented to the VE was inadequate because it failed to incorporate: (1) Ms. Estes's opinion concerning the severity of plaintiff's mental health issues, and lack of concentration; and (2) Ms. Loveland's statement concerning plaintiff's lifting limitation, concentration, and social skills. Pl.'s Opening Br. 16-17 (doc. 17).

In determining whether a claimant retains the ability to perform other work, an ALJ may properly rely on the VE's answer when the hypothetical "contain[s] all of the limitations that the ALJ found credible." Bayliss, 427 F.3d at 1217-18. "[T]he ALJ must only include those limitations supported by substantial evidence." Robbins, 466 F.3d at 886. The ALJ included all limitations she found credible and supported by substantial evidence in the hypothetical presented to the VE. Tr. 311-313. In response, the VE testified there were several jobs existing in

---

[5] The Court also notes that Brink and Lubin are unreported cases, and are not binding precedent.

the national economy that the hypothetical individual could perform. Id. The additional limitations that plaintiff argues were missing from the hypothetical were, as discussed, properly discounted by the ALJ, and plaintiff's argument fails as a collateral attack. Accordingly, the ALJ did not err at step five.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 29th day of August, 2017.

                                                    s/Jolie A. Russo
                                                  JOLIE A. RUSSO.
                                                  United States Magistrate Judge